[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
1) The parties intermarried on August 14, 1992 at New York, NY.
 2) The plaintiff has credibly testified that she has lived in Connecticut at least one year next preceding the initiation of this action.
 3) The plaintiff has credibly testified that the marriage has broken down irretrievably.
 4) The defendant in response to the court's inquiry, testified that the marriage had broken down irretrievably.
 5) There are two (2) minor children issue of this marriage: Jeroy (7/30/96) and Chrystal (10/23/98).
 6) Despite some reference to the contrary, both parties have testified credibly that these children are issue of the marriage.
7) Neither party, despite opportunity to do so, offered any evidence CT Page 10970 which would raise any question as to paternity and/or maternity.
 8) The credible evidence offered by the plaintiff is that no other minor children have been born to her since the date of the marriage and she is not, as of 8/6/01, pregnant.
 9) The defendant is, allegedly, the father of another child, Karoy (8/4/91). That child's relationship to this action was never established. This court has affirmatively refused to entertain any evidence concerning this child and notes that the entry of this final decree merges, into non-existence, any prior orders concerning this child. The Superior Court never had properly established jurisdiction over the child.
 10) At the time of the marriage, the plaintiff had approximately $20,000.00 in a brokerage account and a car, which she claims had a value of $21,000.00.
11) The plaintiff credibly testified to the following facts:
 a) in 1994 she and the defendant liquidated all their assets to go to Jamaica to build a home and start one or more businesses;
 b) in preparation for the move, her parents gave her and the defendant $8,000.00 in cash;
c) in 1995 she engaged in two adulterous affairs;
 d) in 1995, all the living and business efforts having failed, she and the defendant returned to Connecticut with tickets given to her by her parents;
 e) in 1997, she approached her parents to request a loan in the amount of $20,000.00 to purchase a home;
 f) she and defendant received the money and signed a note which called for repayment, together with simple interest at the rate of six (6%) percent per annum (Plaintiffs exhibit 4);[1]
g) a home on Sperry Street was acquired;
 h) that first house was sold and its proceeds used to acquire a new home at Franklin Road;
 i) the Franklin Road home was sold during these proceedings and yielded net proceeds of $65,636.73;[2]
CT Page 10971
 j) while living in each home the plaintiff paid most, if not all the expenses of the family and home maintenance;
 k) during almost the entire period of home ownership, the defendant was `devoting himself' to the pursuit of a fledgling career as a reggae entertainer;[3]
 l) the parties have lived apart, the children living with the plaintiff at her parents house, since the later third of 2000.
 m) all the credit card debt on the plaintiffs financial affidavit, was incurred in the normal course of the marriage and/or the maintenance of the children;
n) until 2000 the parties always filed joint tax returns.
 o) she is a graduate of the College of New Rochelle with a B.F.A. in Studio Arts; and
 p) the Jamaican enterprises failed because of inattention by both parties.
12) The plaintiffs testimony on the following issues was not credible:
 a) she had the extramarital affairs because "he was living with a girlfriend";[4]
b) the original $8,000 she and her father claimed was a loan;[5]
c) the defendant "required her" to execute plaintiffs Exhibit 3;
 d) she left because of "fear" (there being no testimony offered on this claim);
13) The defendant credibly testified that:
 a) he has been working quite hard, without much financial success, to build a music career;
b) he has been disabled from boat mechanic work;
c) he did provide extensive child care to the issue of the parties;
d) he did provide extensive care for the plaintiffs grandmother; CT Page 10972
 e) his only education is at a technical school level in music composition;
 f) the marriage was fairly successful until he discovered the adulterous activity by the plaintiff;
 g) he does, on occasion get paid in cash for performances (approximately $1700.00 in 2000);
 h) tried bus driving but found it did not accommodate his unreasonable demands as to schedule;
i) he believes he has an emerging music career.
 Discussion
Neither party has shown stability and maturity in this relationship.
Despite the obvious obligation to support the children he fathered (and credibly testified he loves deeply), the defendant has refused to engage in meaningful efforts to support the children. His explanation for his failure to provide even minimal support is that he has been working on the musical career.
The law of this state and the norms of our society do not allow this defendant to avoid work for "a dream" until and unless he is meeting his basic support obligations.
The plaintiff is obviously devoted to her children and been able to provide for them. This has been as a result of a very generous family. One could argue that this generosity has fostered and encouraged the defendant's lack of financial performance because of a lack of pressure.
The plaintiff earned much of her own unhappiness
 Orders 1) The marriage is dissolved on the grounds of irretrievable breakdown.
 2) The parties are vested with joint legal custody of Jeroy and Chrystal. The children's primary residence shall be with the plaintiff.
3) The defendant shall enjoy regular, liberal and flexible visitation. CT Page 10973
 4) Counsel for the defendant shall, prior to distribution of the escrow held to the plaintiff-wife, pay off each and every joint credit card debt listed on plaintiffs financial affidavit or otherwise known to the plaintiff. As part of this process, the plaintiff and defendant will each sign instructions to each creditor to close said accounts which instruction will be transmitted with the payoff.
 5) The balance, if any, of the escrow will be paid over to the plaintiff-wife.
 6) The plaintiff shall hold the defendant-husband harmless from any claims arising under these credit card accounts.
 7) In accord with the desire of boh, [both], parties, all Jamaican real property is awarded to the defendant-husband free and clear of any claim by plaintiff-wife.
 8) Each party shall retain, free of claim by the other, each and every asset listed on the financial affidavit.
 9) Based on the limited testimony elicited, the court finds that the defendant-husband reasonably has an earning capacity of $550.00 This is based on $350.00 per week as a bus driver or other like paid position and an average of $200.00 per week from performing.
 10) Child support, including daycare, in accord with the allowable guidelines, is ordered in the amount of $95.00 per week. A contingent wage execution is ordered.
 11) Child support will be retroactive to March 2, 2001 (Motion #110) and will be paid at the rate of $10.00 per week.
 12) The wife shall pay for and retain medical insurance for the benefit of the minor children so long as it is available at no or reasonable cost through her employer.
 13) In light of the overall assets of the parties and potential for earnings, the court deviates from the Child Support Guidelines and orders each party to pay one-half of the children's un-reimbursed medical expenses, dental expenses, prescription expenses, optical expenses and/or psychological expenses after the plaintiff has paid, annually, the first one hundred ($100.00) dollars of said unreimbursed expenses for each child.
14) The plaintiff shall have both tax exemptions for the children. CT Page 10974
 15) The proceeds, if any, of any personal injury claim and/or workers' compensation claim due the defendant shall be his free of any claim by the plaintiff.
16) The birth name of the plaintiff, Jennings, is reinstated.
 17) The defendant shall pay the plaintiff one dollar ($1.00) per year alimony until her death, remarriage or cohabitation (as defined by statute). This alimony award is based on the current financial affidavits of the parties. The defendant will, each an every six (6) months provide the plaintiff with a complete earnings statement for the pervious, [previous], six (6) months. In addition, on or before May 15 of each year, the defendant shall provide the plaintiff with a copy of his tax return for the previous year.
 18) The defendant will, within fifteen (15) days of the entry of this judgment, provide the plaintiff with an irrevocable authorization for getting any and all tax filings by the defendant with the United States of American and/or Jamaica. Said authorization shall be in effect so long as the plaintiff shall have a claim for alimony.
19) Each party will pay their own attorney's fees.
DANIEL E. BRENNAN, JR., J.